UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Crim. No. 05-215(EGS) |
| v. | ) | |
| WAYNE MORRIS | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant, Wayne Morris, through undersigned counsel, respectfully submits his Memorandum in Aid of Sentencing.

**Procedural History**

Mr. Morris is before the Court awaiting sentencing after he entered a guilty plea on November 15, 2005. Mr. Morris pled guilty to the one count indictment charging him with Possession of a Firearm by a Person previously convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation of 18 U.S.C. § 922(g)(1). Mr. Morris committed the offense on February 19, 2005. Pursuant to the offense of conviction Mr. Morris faces a maximum sentence of incarceration of tens year, a fine of $250,000.00 dollars, a $100.00 dollar Special Assessment and a term of Supervised Release of up to three years.

According to Probation Officer Valencia Fletcher's Pre-Sentence Investigation Report ("PSR") Mr. Morris is subject to a sentencing range of 57 to 71 months of incarceration. The range is based on Mr. Morris' Criminal History Category IV and Base Offense Level 21 (PSR ¶ 50) The range is calculated after a three point adjustment for acceptance of responsibility.

**Factual History**

On February 11, 2005 Mr. Morris was arrested after he sold a quantity of marijuana to an undercover officer. After purchasing the illegal substance the undercover officer signaled to the arrest team to detain Mr. Morris. Mr. Morris was stopped and arrested shortly thereafter. Mr. Morris was subsequently, charged with Unlawful Distribution of Marijuana in the Superior Court for the District of Columbia. On February 17, 2005 officers who participated in the February 11th marijuana investigation and arrest of Mr. Morris obtained a search warrant for residence. On February 19, 2005 the government executed the search warrant on the row house located at 23 S st., NW. During the search the officers recovered the firearm in Mr. Morris' room which is the basis for the Federal charged pending against Mr. Morris before this Court.

I. **PURSUANT TO UNITED STATES v. BOOKER , 18 U.S.C. § 3553(a) AND USSG § 5K2.0 THE COURT HAS AUTHORITY TO SENTENCE MR. MORRIS BELOW THE APPLICABLE GUIDELINE RANGE OF 57-71 MONTHS**

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory sentencing guidelines as they were applied were unconstitutional. The Court further held that judges are required to "take account of the Guidelines together with other sentencing factors," and to "consider" the guidelines along with all the other required factors (emphasis added). But there is no requirement that a sentence be within the guidelines range, and a number of other statutory factors, which are mandatory, must be followed by the court.

Those factors include, among others, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with the needed educational or vocational training, and pertinent policy statements issued by the

sentencing commission, the need to avoid unwarranted sentencing disparities among similarly situated defendants. U.S. v. Clifton Price 409 F.3d 436, 442 (D.C. Cir. 2005)  Courts, however, have a continuing duty to "weigh the purposes of sentencing listed in the Sentencing Reform Act, including the need for the sentence to "reflect the seriousness of the offense", deter future criminality, protect the public, and provide the defendant with needed training, medical care or other correctional treatment." U.S. v. Jabber 362 F.Supp.2d 365, 369 (D. Mass. 2005)(emphasis added)

Viewed in that context, even a sentence of 57 months of incarceration, the low end of the applicable range, does not adequately take into account the 18 U.S.C. § 3553(a) factors that the Court has to consider in arriving at a reasonable sentence.  Moreover, once the mandatory nature of the guidelines has been removed, the enabling statute for the Sentencing Commission and the overarching goals of sentencing contemplate a more flexible approach to sentencing.

A review of 28 U.S.C. § 991(b)(1)(B) supports a sentence that is not confined to a rigid mechanistic formula that ignores legitimate and statutory factors in arriving at a fair sentence.  In creating the Sentencing Commission, Congress in striving for uniformity and fairness in sentencing did not lose sight nor preclude the notion of individualized sentencing.  In pertinent part 28 U.S.C. § 991(b)(1)(B) specifically allows for a none guideline sentence by allowing Courts to "maint[ain] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices;"

In essence both 18 U.S.C. § 3553(a) and  28 U.S.C. § 991(b)(1)(B) compliment one another in guiding Courts to arrive and impose a sentence that does take into account the

defendant's history, and <u>not just criminal the history</u>.  Given Mr. Morris' young age, his convictions, in the context of the "history and characteristics of the defendant", 18 U.S.C.A. (a)(1) []the prior convictions should not be used to enhance the sentence as suggested by the guidelines <u>United States V. Lewis G. Naylor Jr.</u> 359 F.Supp.2d 521, 524 ( W.D.Va., 2005); <u>see</u> <u>United States V. Huerta-Rodriguez</u> 355 F.Supp. 2d 1019, 1026 (D. Nebraska 2005) (Court's review of empirical evidence, charging and plea bargaining practices and the Sentencing Commission's Fifteen-Year Assessment show "that the guidelines do not necessarily represent a reliable indication of reasonableness in every case").

     18 U.S.C. § 3553(a)(1) directs the Court to look at Mr. Morris's history and nature and circumstance of the offense.  The nature of the offense, 18 U.S.C. § 922(g)(1), is a case of constructive possession of a firearm that was found inside of his bedroom.[1]  The firearm was recovered while Mr. Morris was in custody for the distribution of marijuana.  This fact is important because the gun did not present the potential harm that arises with actual possession of the firearm.

     Moreover, it can be construed that a person who has actual possession of a firearm in a public area has other unlawful motives for carrying the gun.  Certainly, when Mr. Morris was arrested for drug distribution he was not using the firearm to further his illegal drug dealing.  Although Mr. Morris was the target of the search warrant for the sale of illegal drugs, the police

---

[1] The Court can also consider that Mr. Morris' crime, 18 U.S.C.  § 922(g)(1), is not classified either as a crime of violence for pre-trial detention purposes pursuant to the Bail Reform Act or as a predicate for either an Armed Career Criminal or Career Offender enhancements <u>see</u> respectively, 18 U.S.C.  § 3142(f)(1), 18 U.S.C.  § 924(e)(1) and USSG  § 4B1.1

investigation did not reveal that he was known to carry a firearm.

Pursuant to 18 U.S.C. § 3553(a)(1)(2)(A) Mr. Morris's sentence must reflect the seriousness of the offense. There is no question that Mr. Morris violated the law and that the Court has to address his conduct. However, the seriousness of the offense has to take into account and result in a sentence that "promote[s] respect for the Law and provide[s] just punishment". For the foregoing reasons, undersigned counsel moves the Court to impose a sentence below the applicable guideline range.

**A.     USSG 5K2.0 PROVIDES THE COURT WITH AUTHORITY TO DEPART SINCE MR. MORRIS' CRIMINAL HISTORY CATEGORY IS OVER-REPRESENTED**

In the plea agreement Mr. Morris reserved the right to move for a downward departure based on over-representation of his criminal history. (see ¶ 9, Page 3 of the Plea Agreement) Mr. Morris makes his request for a departure pursuant to USSG § 4A1.3 which authorizes a downward departure when "a defendant's criminal history significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." USSG § 4A1.3 (emphasis added).

The PSR accurately reflects that Mr. Morris has been periodically involved in criminal conduct as an adult since the age of 18 see PSR ¶ 25. Noteworthy is Mr. Morris' lack of a juvenile record. Thus his criminal history and conduct has all taken place during his brief adult life. However, although Mr. Morris' criminal offenses can be categorized into assaultive behavior and drug dealing, he has never committed himself to a rehabilitation regime that addressed both problems. Equally so, Mr. Morris has never received the type of sustained rehabilitation that he will receive in a Bureau of Prison facility. Clearly, it will be up to Mr.

Morris to take full advantage of the vocational and drug treatment programs that will be made available to him in the Bureau of Prison.

There is no denying that Mr. Morris has brought about his own legal problems and that he has jeopardized his young adult life. However, Mr. Morris has never faced the extended term of incarceration that he is now facing. The long sentence coupled with his desire to make a significant change in his life and eagerness to receive treatment for anger management and for substance abuse, should reduce the degree and future likelihood of recidivism. Accordingly, undersigned counsel requests that the Court consider departing from Mr. Morris' Criminal History Category IV to Criminal History Category III the corresponding sentencing range of 46 to 57 months.

**II      THE COURT CAN CONSIDER MR. MORRIS' SUBSTANTIAL ASSISTANCE IN IMPOSING A SENTENCE BELOW THE APPLICABLE GUIDELINE**

On June 15, 2005 Mr. Morris appeared before this Court for his Initial Appearance and Arraignment. Although, the firearm at issue was recovered on February 19, 2005 it was not until June 2, 2005 that the government obtained a grand jury indictment against him. Undersigned counsel is unfamiliar with the reasons why there was nearly a four month delay in charging Mr. Morris. It was further surprising that the Federal prosecution was delayed when Mr. Morris was expeditiously prosecuted in the Superior Court for the February 11, 2005 distribution of marijuana charge.

In the latter case, Mr. Morris entered his guilty plea on April 15, 2005. Superior Court Judge Erik Christian scheduled Mr. Morris' Sentencing Hearing for June 30, 2005. Thus, it came as a surprised to Mr. Morris that while he was waiting to be sentenced for the February 11,

2005 crime he was on was indicted on the firearm charge nearly four months after the gun was recovered. Even more surprising was to be informed by the government that they were pursuing an investigation against the two officers who assaulted Mr. Morris immediately after he made the illegal sale of marijuana on February 11, 2005.

It was only after a full year had transpired, in early February of this year, that Mr. Morris became aware, through undersigned counsel, that the violent assault that he sustained was under investigation. Undersigned counsel learned of the case from Assistant United States Attorney, Miriam Borum. Another surprise was the existence of a video tape concerning the assault that the government had in its possession. Ms. Borum asked undersigned if Mr. Morris was interested in meeting with the authorities with the objective of seeing the video tape. Mr. Morris agreed to do so. The video tape captures the very violent, physical and verbal, assault that was inflicted on a defenseless Wayne Morris[2].

Undersigned is not privy to the status of the government's investigation of the officers who assaulted Mr. Morris. However, it would be safe to assume that a successful investigation of the officers actions will depend on Mr. Morris' willingness to assist the authorities. Mr. Morris has acknowledged that he is willing to continue his participation in any ongoing investigation.

Since the government's investigation of the officers may very will depend substantially on Mr. Morris' participation, undersigned counsel made inquires regarding a Motion for a

---

[2] Undersigned counsel requested a copy of the video so that the Court could see for firsthand what was done to Mr. Morris. Ms. Borum was unwilling to provide a copy of the video but indicated that she would make arrangements to have the video delivered directly to chambers, at the Court's convenience.

Downward Departure Motion pursuant to a USSG § 5K1.1. The government's response has been that per Mr. Morris' status as a victim, the motion is unavailable. However, there is nothing in USSG § 5K1.1 or 18 U.S.C. § 3553(e) which precludes a defendant/victim from receiving consideration for the providing assistance in the prosecution of others.

Undersigned counsel acknowledges that a 5K Substantial Assistance motion is solely at the discretion of the government. However, the Court can take into account Mr. Morris' assistance to the authorities in the investigation of the two officers for consideration of a none guideline sentence pursuant to United States v. Booker. Moreover, Mr. Morris' arrest, the vicious assault that he suffered and the unusual delay in the federal indictment are part and parcel of [T]he nature and circumstance of the offense" 18 U.S.C. § 3553(a)(1), which the Court can consider in imposing sentence.

In evaluating a defendant's cooperation, the Court is to consider five factors: (1) the significance and usefulness of the assistance; (2) the truthfulness, completeness, and reliability of any information provided; (3) the nature and extent of the assistance; (4) any danger or risk of injury resulting from the assistance; (5) the timeliness of the assistance. Particularly in view of first, second, third, and fifth factors, Mr. Morris should be entitled to some consideration for the assistance that he has provided thus far. Equally important Mr. Morris has indicated his future willingness to assist the government.

**CONCLUSION**

Mr. Morris is before the Court facing his fifth criminal conviction. As a twenty four year old young man, Mr. Morris is in danger of spending entire young adult life (his twenties) either incarcerated and/or under some form of Criminal Supervision. The instant conviction represents

Mr. Morris most serious transgression of the law and with it the longest prison sentence.   Even if the Court where to accept the defense's sentencing recommendation,  Mr. Morris will end up being released from prison when he is in his late twenties.  Once he leaves prison, Mr. Morris will be on supervised release for up to three years, and the Court will continue to have jurisdiction over him with the power to re-incarcerate him.  In short, Mr. Morris will still be answering for the instant offense when he is in his early thirties.

    Mr. Morris needs to make a dramatic change in the direction of his life.  In many ways he is fortunate that the assault that he was subjected to was not carried out drug dealers who are known to assault, rob and eliminate their competitors.  Hopefully, the two convictions, with the two corresponding prison sentences and the assault that he suffer will finally make a lasting impression on Mr. Morris to abstain from future criminal behavior.

    By looking at the overall picture that Mr. Morris and the facts of the case bring to the Court, undersigned counsel requests that the Court depart downward from Criminal History Category IV to Criminal History Category III, and that Mr. Morris be sentenced to a term of incarceration of 46 months, and that his sentence be credited nun pro tunc to February 19, 2005 the date when the firearm was recovered.

    Respectfully submitted,

    A.J. Kramer
    Federal Public Defender

    _____/s/_____
    Carlos J. Vanegas
    Assistant Federal Public Defender
    625 Indiana Ave., N.W., Suite 550
    Washington, D.C.  20004
    (202) 208-7500