UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.05-215 (EGS) |
| | : | |
| v. | : | |
| | : | |
| WAYNE MORRIS, | : | |
| defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant within the Guidelines range calculated in the Presentence Report.

I. **BACKGROUND**

On November 15, 2005, the defendant pled guilty to one Count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding one Year in violation of 18 U.S.C. §§922(g)(1) and 924 (a)(2).

Prior to be charged in this matter, Mr. Morris was arrested on February 11, 2005 after he sold a quantity of marijuana to an undercover officer. The defendant was subsequently charged with Unlawful Distribution of Marijuana in the Superior Court for the District of Columbia. At that time of the defendant's plea in this matter, he admitted that following his arrest on February 11, 2005, members of the Fifth District Focus Mission Unit of the Metropolitan Police Department ("MPD") executed a search warrant on February 19, 2005 at 23 S Street, N.W., the defendant's home. When the officers obtained entry into the home, they spoke with two individuals inside the home. The two individuals informed the officers that the defendant's bedroom was the middle room directly above the room in which they were standing. The officers

then searched that room. Inside a dresser in the defendant's bedroom, officers recovered mail matter in the defendant's name. They also recovered drug paraphernalia and a loaded 9 mm Sigsauer Model P228 pistol. There was one bullet in the chamber of the pistol and thirteen bullets in the magazine, which were a "firearm" and "ammunition" within the meaning of 18 U.S.C. § 922(g). Both were manufactured outside the District of Columbia, and the defendant's possession of both were in or affected interstate commerce. Further the defendant admitted that he had previously been convicted of a crime punishable by imprisonment of more than one year prior to possession of the firearms and ammunition in this case. Specifically, on June 29, 2001, the defendant was convicted of Distribution of Cannabis within 1000 feet of a school in the United States District Court for the District of Columbia in case D01-54.

## II.     SENTENCING CALCULATION

### A     Statutory Maximum

The maximum sentence for Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding one Year in violation of 18 U.S.C. §§922(g)(1) and 924 (a)(2) is incarceration for a period not more than 10 years and/or a fine of $250,000, or both.

### B.     United States Sentencing Guidelines Calculation

Based on a total offense level of 21 and a criminal history category of IV, the guidelines range for the defendant is 57 to 71 months. Because the applicable guidelines range is in Zone D of the Sentencing Table, the defendant is not eligible for probation. See USSG § 5B1.1, Comment n. 2, and USSG § 5C1.1(f). The PSR writer did not find factors indicating that a downward departure is warranted. See PSR ¶ 64. For the reasons set forth, infra Section III of

this Memorandum, the government respectfully recommends that the Court sentence the defendant within the Guidelines range calculated in the PSR.

     C. The Impact of Booker

It is the government's position that the Court should impose a sentence within the 70 - 87 month guideline range. In United States v. Booker, 2005 WL 50108 (U.S. Jan. 12, 2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 2005 WL 50108, at *16. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Id. at *24.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when

sentencing." Booker at *27 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in 18 U.S.C. Section 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; © to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the

factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence.  See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. Section 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases").  Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns."  Booker, 2005 WL 50108, at *26; see id. at *27 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions  . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court.  Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history.  See, e.g., id. at *21 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at *19 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at *42 (dissenting opinion of Stevens, J.) ("The elimination of sentencing

disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at *47 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity."). Since the Guidelines currently represent the only extant benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See Booker, at *24. Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. Section 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable. Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, Booker also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals reasonableness review. See 18 U.S.C. Section 3553© (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); 18 U.S.C. Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. This is so, said the court in <u>United States v. Wilson</u>, 2005 WL 78552 (D. Utah Jan. 13, 2005) – the day after <u>Booker</u> was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, <u>Wilson</u> held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. <u>Wilson</u> further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." <u>Id.</u> at *1. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Guidelines range calculated in the Presentence Report.

**III.   <u>DEFENDANT SHOULD BE SENTENCED WITHIN THE GUIDELINES RANGE</u>**.

The Government is recommending that the Court sentence the defendant within the applicable Guidelines range of 57-71 months. The Sentencing Guideline range is not only presumptively reasonable, for the reasons outlined above, but it is reasonable and appropriate for this defendant based on the facts of this case, and the sentencing factors enumerated in 18 U.S.C. § 3553. The sentencing factors enumerated in 18 U.S.C. § 3553 fall into three main categories: the nature of the offense, the needs of the public, and the history and characteristics of the defendant. United States v. Ranum, 353 F. Supp.2d 984, 989 (E.D. Wis. 2005). The defense's assertions to the contrary notwithstanding, the offense in this case is very serious. Defendant Morris has admitted to possessing a loaded handgun. When combined with his admitted drug dealing, it is a very serious matter indeed, particularly given the extraordinary level of gun violence in the city including recent murders of juveniles and numerous innocent victims. Further, this is not the first time that the defendant's affinity for guns and drug dealing has come to the attention of the judicial system. In 2001, the defendant was convicted for distributing marijuana within a 1000 feet of an elementary school. Like here, following that arrest, the defendant's residence was search. Like here, a loaded handgun was recovered. PSR at ¶ 26. The defendant's repeated illegal conduct clearly presents a substantial danger to the community. The Court needs to send an unambiguous message to the defendant that such unlawful conduct will not be tolerated.

Apart from the seriousness of the present offense, the defendant also has a significant criminal history that should also be considered by the Court. The defendant argues in his memorandum in aid of sentencing that he is deserving of a downward departure pursuant to USSG § 4A1.3 because he argues his criminal history is over-represented by his Guidelines

criminal history score. Def.'s Memorandum in Aid of Sentencing at 5-6. The defendant is incorrect. A review of his criminal history reveals that his criminal history category of IV appropriately represents the defendant's criminal history and likelihood that the defendant will commit other crimes. Indeed, the defendant has had significant contacts with the criminal justice system in every year of his adult life save one, including convictions for distribution of marijuana within a 1000 feet of an elementary school, attempted distribution of marijuana, destruction of property, violation of a civil protective order, and a domestic assault on his mother. In each of these cases, the defendant struggled, or outright failed, when he was placed on probation or supervised release. The defendant also has three prior arrests for possession with intent to distribute marijuana, one arrest for possession of marijuana, and one for aggravated assault. These multiple prior contacts with the judicial system easily justify the defendant's criminal history category of IV, and, coupled with the instant offense, demonstrate that the defendant remains a danger to the community.[1]

Also of no moment is the defendant's assertion that the U.S. Attorney's Office is investigating an alleged assault by police officers on the defendant at the time of his arrest on February 11, 2005, eight days prior to the search warrant that led to the recovery of the gun at issue here. Whether or not the defendant was the victim of an assault by the police during his arrest in the Superior Court matter has no relevance to his sentencing on the gun possession (or the underlying drug dealing) that he stands convicted of here. The alleged assault is under

---

[1] Further, the defendant has already received a substantial benefit from this plea, and all the leniency the defendant should receive is encompassed therein. Specifically, by pleading guilty the defendant earned himself a three-level decrease in his base offense level which had the effect of decreasing his Guidelines sentence from 77 to 96 months down to from 57-71 months

investigation by the U.S. Attorney's office and appropriate action against the officers will be taken if justified by that investigation. As for the defendant, he must answer for the bad choices that he has made without reference to the possible wrongful (and irrelevant) acts of others. The defendant's attempt to parley his status as possible victim in that matter into a reduction in his sentence here should fail.

Further, defendant's status as a possible victim in that matter also undercuts his claim for a downward departure here for assisting in that investigation. As an initial matter the U.S. Attorney's office has not filed a 5K Substantial Assistance motion with regard to any assistance the defendant has provided in the police investigation, so a downward departure under § 5K1.1 would not be permissible under the Guidelines. Nor would the Government seek to file such a motion in the future regardless of the outcome of the police investigation. The defendant's status as a potential victim of a crime, independent of his own criminal conduct is not a basis for a sentencing departure. Rather, the defendant, like any crime victim has certain rights, see, e.g., 42 U.S.C. § 10601, et. seq.; D.C. Code 23-1901, et. seq., and the responsibility to provide truthful information to investigators and, if warranted, truthful testimony about the criminal acts that they suffered.

## IV.    CONCLUSION

The nature of the offense, the needs of the public and the defendant's criminal history and characteristics all suggest that a substantial sentence of incarceration within the Guidelines range would be reasonable. Such a sentence would reflect the seriousness of this offense, the community's need for protection from the dangers posed by the defendant's possession of a loaded gun, and the defendant's very serious criminal history.

        Respectfully,

        KENNETH L. WAINSTEIN
        United States Attorney
        Bar No. 451058

        _____

        G. Michael Harvey
        Assistant United States Attorney
        Narcotics Section, Mass. Bar No. 447465
        555 4th Street, N.W. #4243
        Washington, DC 20001
        Phone: 305-2195; Fax: 514-6010

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Carlos J. Vanegas, Esquire, this 10th day of April, 2006.

        _____
        G. Michael Harvey
        Assistant United States Attorney