**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | Crim. No. 05-215(EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| **WAYNE MORRIS** | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM  IN AID OF SENTENCING**

Defendant, Wayne Morris, through undersigned counsel, respectfully submits his supplemental memorandum in aid of sentencing.

**Procedural History**

Mr. Morris is before the Court pending sentencing pursuant to a guilty plea to one count of Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Morris committed the offense on February 19, 2005.  Mr. Morris entered his guilty Plea on November 15, 2005. Pursuant to the conviction Mr. Morris faces a maximum sentence of ten years of incarceration,  a fine of $250,000.00 dollars, a $100.00 dollar Special Assessment and a term of Supervised Release of up to three years.

The application of the advisory Federal Sentencing Guidelines has established a sentencing guideline range of 57 to 71 months of incarceration.  The range is based on a Criminal History Category IV and Base Offense Level 21 after a three-point adjustment for acceptance of responsibility.

**Factual History**

On February 11, 2005, Mr. Morris was arrested after he sold a quantity of marijuana to an undercover officer. After purchasing the illegal substance the undercover officer signaled to the arrest team to detain Mr. Morris. Mr. Morris was stopped and arrested shortly thereafter. Mr. Morris was subsequently, charged with Unlawful Distribution of Marijuana in the Superior Court for the District of Columbia. On February 17, 2005, officers who participated in the February 11, 2005 by/bust investigation and arrest of Mr. Morris obtained a search warrant for his residence. On February 19, 2005, the government executed the search warrant on the row house located at 23 S St., NW. During the search the officers recovered a firearm in Mr. Morris' room which is the basis for the criminal case before the Court.

The paramount question raised by the Court in the January 25, 2007 Sentencing Hearing concerns the government's admission that Mr. Morris was in fact a victim on February 11, 2005. Prior to the January 25, 2007 hearing government counsel, G. Michael Harvey, had characterized the officer's assault as an "allegation."

On February 11, 2005, Mr. Morris committed a criminal act by selling a quantity of Marijuana to an undercover officer in a buy/bust operation. After selling the marijuana Mr. Morris realized that he was being followed and he ran into a convenience store. Inside the convenience store Mr. Morris was cornered by two officers dressed in all black who proceeded to initiate the arrest in a violent and assaultive manner.

Parts of the incident inside the convenience store were captured by a video camera located in the back of the store. However, the entire incident was audio taped, such that noises consistent with strikes are clearly heard. Also clearly audible are the expletives, threats and

violent language that the officers used against Mr. Morris.

The issue raise by the Court then is what if any impact should the government's admission that Mr. Morris was a victim of the police action on February 11, 2005 have on his sentencing for a criminal offense that took place days later, on February 19, 2005 when Mr. Morris was in the custody of the District of Columbia Jail.

There are various reasons why the fact of the Police assault should be considered by the Court in its sentencing determination. As an initial matter the fact of the assault was never mentioned when Mr. Morris was presented in the Superior Court. It was never raised before or after his plea or during his sentencing hearing. As a result the case was prosecuted as a typical/routine drug distribution case.

The facts of the assault should have been disclosed as pre-trial discovery for the mere fact that Mr. Morris' detention and arrest were equally central to the prosecution of the case as was his sale to the undercover officer. The buy/bust operation consisted of the undercover officer exchanging twenty dollars of pre-recorded MPDC funds for marijuana. Undercover officers in buy/bust operations pre-record their currency in order to prove that they obtained the narcotics from the person who is later stopped and in possession of the pre-recorded funds.

 Before retrieving the pre-recorded funds the arrest team had to effectuate the arrest. Procedure also dictates that the arresting officers go through an identification procedure in order for the suspected seller to be identified by the undercover officer who purchased the contraband. A buy/bust operation is a routine investigation operation. In this case the routine operation ended with two officers assaulting Mr. Morris after being cornered inside a convenience store.

Mr. Morris' defense attorney could have used the fact that the arresting officers would

have been required to testify because they pursued Mr. Morris, stopped him, arrested him,

searched him, and produced him for an identification procedure.  However, the fact of the assault

and the arrival of the ambulance would have created problems for the government.  In particular

the arresting officers would have had to prove at trial that they recovered the pre-recorded funds

from Mr. Morris.

The video appears to be rebut the possibility that Mr. Morris was searched inside the

store since the assault was immediate and then for a significant period of time he is lying

unconscious on the ground.  After he is lying on the ground, no officer is seen retrieving any

contraband or pre-recorded currency from Mr. Morris.  Mr. Morris is not moved until emergency

medical personnel arrive to administer first aid.  It is speculative whether Mr. Morris' Superior

Court counsel would have pursued the outlined trial strategy.  Yet, the fact of the assault would

have given defense counsel additional options regarding her strategy.

The fact of the assault was unknown because the police did not file a single report which

referenced the assault.  For example the search warrant affidavit that targeted Mr. Morris'

residence reduces the facts of Mr. Morris' fleeing and arrest to:

> " As the arrest team moved in, Mr. Morris took notice to the police and fled.  Mr.
> Morris stopped inside of the grocery and North Capitol and Seaton Place N.W.
> Mr. Morris was brought outside the grocery store and positively identified by the
> UC.  Mr. Morris was arrested for Distribution of Marijuana." (Affidavit in
> Support for Search Warrant filed by Officer Michael Boland)

An Investigative File Report (PD 854) filed by Officer Michael Boland similarly limits or

excludes information regarding the assault that took place inside of the convenience store;

> "[M]R. MORRIS THEN HANDED UC 4205 ONE CLEAR ZIP CONTAINING
> A GREEN WEED SUBSTANCE.  A PORTION WHICH FIELD TESTED
> POSITIVE FOR TEC.  UC 4205 THEN HANDED MR. MORRIS $20.00 IN

> PRE-RECORDED MPD FUNDS . UC 4205 LEFT THE AREA AND
> BROADCASTED A LOOKOUT TO THE ARREST TEAM. WHEN MR.
> MORRIS NOTICED THE ARREST TEAM MOVING IN, MR. MORRIS TOOK
> FLIGHT. MEMBERS OF THE ARREST TEAM APPREHENDED MR.
> MORRIS INSIDE OF THE GROCERY STORE LOCATED AT NORTH
> CAPITOL AND SEATON PLACE, N.W.  MR. MORRIS WAS ARRESTED
> FOR DISTRIBUTION OF MARIJUANA. MR. MORRIS GAVE THE
> OFFICERS THE ADDRESS OF 23 S. STREET N.W. AS HIS RESIDENCE.

The assault against Mr. Morris was witnessed by officers who did not engage in the beating and civilian witnesses, including the grocery cashier.  Inexplicably, Officer Michael Boland wrote the two reports as though nothing unusual happened.  On the contrary the police conduct resulted in an unconscious suspect lying prostrate on the ground and with officers looking helplessly as they waited for Emergency Medical personnel to provide first aid.

The assaulting officers' actions were in clear contravention of both the law that they are supposed to uphold and of their governing rules of conduct.  **See** D.C. Code  § 5-123.02 (Use of unnecessary or wanton force)[1]   Metropolitan Police General Order 304.10 Part I B 5. provides guidance and limitation regarding physical force in "Effecting a Stop and Detention." Pursuant to General Order 304.10

> "[O]fficers shall use the least coercive means necessary to effect a stop.  The least
> coercive means, depending on the circumstances, may be a verbal request, an
> order or the use of physical force."

 While physical force is contemplated in certain situations, its actual application is clearly circumscribed by subsection 6.b of General Order 304.10.  In relevant part and central to the issue before the court subsection 6.b states that

---

[1]       D.C. Code § 5-123.02 which addresses the "Use of unnecessary or wanton force" simply states; "Any officer who uses unnecessary and wanton severity in arresting or imprisoning any person shall be deemed guilty of assault and battery, and, upon conviction, punished therefor."

"[T]he amount of force shall be not be such that it could cause death or serious
bodily harm to the person stopped. This means that an officer may not use his/her
service revolver or other service weapons to effect a stop and detention"
(emphasis in the original)

General Order 901.7 which governs the Use of Force reaffirms the limitation on the use

of force by quoting District of Columbia Municipal Regulation 6A Sec. 207.1 which

"[p]rovides among other thing that a member is allowed to 'use only the minimum
amount of force, which is consistent with the accomplishment of his or her
mission, and shall exhaust every other reasonable means of apprehension or
defense before resorting to the use of firearms.'"

It is a fact that the arresting officers did not discharge their firearms.  However, the store

video captures the officers with their guns drawn as they corner Mr. Morris.  Afterwards the

sounds of strikes are heard, sounds which are consistent with a firearm being used repeatedly to

strike.  The reasonable conclusion is that Mr. Morris' head was on the receiving end of those

strikes.

In view of the proscriptions contained in the referenced General Orders and D.C. Code §

5-123.02, the officers' conduct was in clear contravention of law and established procedures.

Since the officers are now under investigation and the government has admitted that Mr. Morris

was a "victim," the Court should consider the assault in its sentencing determination.

While the case before the Court is based on what took place eight days after the assault,

the facts of the assault should have been properly presented to the Mr. Morris' Superior Court

defense attorney and to the Superior Court Judge who presided over the case.  With the facts of

the assault the Superior Court attorney could have used the facts in plea negotiations and in her

sentencing preparation and presentation.

Pursuant to D.C. Code § 24-301.01(a) a Sentencing Court is supposed to consider the following factors in imposing a sentence:

(1)     Reflect the seriousness of the offense and the criminal history of the offender;

(2)     Provide for just punishment and afford adequate deterrence to potential criminal conduct of the offender and others; and

(3)     Provide the offender with needed educational or vocational training, medical care, and other correctional treatment.

The fact of the assault is inextricably linked to the three goals and consideration of D.C. Code § 24-301.01(a). It is undisputed that the criminal offense was a very serious violation. But an integral part of the offense was the police conduct in the manner that they arrested Mr. Morris. Mr. Morris was sentenced to a term of imprisonment that satisfies the need for punishment and which serves the purpose of deterrence. However, lost in the sentencing determination was the Court's right to consider that the defendant was assaulted and that the assault was a completely separate and unjustified punishment.

The Sentencing Court could have taken into account the assault and modified the sentence in order to provide for medical care or treatment that addressed the assault. Mr. Morris could have argued that his need for medical and/or psychological care could have been better provided in the community. Mr. Morris' counsel could have advocated that deterrence of future criminal activity could have been achieved by the fact of the assault. After being knocked unconscious Mr. Morris could have reasonably believed that any future contact with law enforcement could result in a similar beating.

Because the fact of the police assault was never presented to the Superior Court Judge or

defense counsel, the Court's suggestion of running Mr. Morris' sentence concurrent to the

Superior Court sentence is reasonable.   The two cases are related.  The cases involve the same

defendant, the search warrant for the second case is based on the first case, the federal and local

sentencing statutes, 18 U.S.C. § 3553(a) and D.C. Code § 24-301.01(a) are similar in delineating

the offense factors and history of the defendant to be considered in arriving at an appropriate

sentence.

A concurrent sentence is an equitable resolution for the fact that the prosecutions of the

two cases, although linked, were prosecuted four and half months apart.  Mr. Morris was

presented in the Superior Court case on February 12, 2005.  On April15, 2005 Mr. Morris

entered his guilty plea to Attempted Distribution of Marijuana and his sentencing hearing was

scheduled for June 30, 2005.  Then out of  nowhere and without any prior knowledge, Mr. Morris

was brought into Federal District Court on June 15, 2005 and charged with a violation of 18

U.S.C. § 922(g)(1).  Had the two prosecutions taken place closer in time, Mr. Morris may have

worked out a more favorable plea that took into account both cases.  A combination or "global"

plea is routinely considered but Mr. Morris never had the option.  A concurrent sentence would

provide the relief that defendants charged both in Federal Court and the Superior Court usually

are inclined to pursue.

In its opposition to the Court's consideration of Mr. Morris' status as a victim, the

government pointed out that Mr. Morris has a civil remedy available.  While that the government

is technically correct,  Mr. Morris faces procedural and practical considerations that minimize the

availability of a civil remedy.  Mr. Morris is going to need the assistance of counsel to proceed

with a civil suit and he does not have the funds to contract a lawyer to look into his case.

Furthermore, Mr. Morris does not know of any lawyer who could take his case.  In fact, Mr. Morris has relied on undersigned counsel to assist him with civil representation.  Undersigned counsel reached out to members of the defense bar regarding representing or even taking a preliminary look at Mr. Morris' case.  Two lawyers of the many who were contacted agreed to look at the case.  One lawyer after receiving the relevant materials never responded after repeated calls and emails.  Another lawyer indicated that he would take the case and even met with Mr. Morris.  However, recently that lawyer indicated that he would be unable to proceed with the case.  It follows that the likelihood that Mr. Morris will find representation is speculative at best.

Finally, undersigned counsel again urges the Court to consider Mr. Morris' assistance to the government in furthering their prosecution of the assaulting officers.  The government has made a distinction that a "victim" to a crime, who also happens to be a defendant, should not receive any sentencing consideration pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1.  However, there is no preclusive language in either the statute or the guideline that precludes a defendant who is also a "victim" from receiving substantial assistance consideration.

Support for consideration of Mr. Morris's assistance to the government is found in the commentary section of U.S.S.G.§ 5K1.1.  Under the heading "Background" the Sentencing Commission indicates as much when it included the following; "A defendant's assistance to authorities in the investigation of criminal activities has been recognized in practice and by statue as a mitigation sentencing factor."  Mr. Morris is not asking for a 5K1.1 departure nor is he saying that he deserves one.  He is only saying that his information and participation, thus far, has been very helpful to the government.  While he cannot receive consideration pursuant to U.S.S.G. § 5k1.1, his position is that the Court can consider his efforts to assist the government,

9

in the context of 18 U.S.C. § 3553(a) and D.C. Code § 24-301.01(a).

## **CONCLUSION**

On account of the assault inflicted on Mr. Morris, now acknowledge by the government, its tardy disclosure, and the manner in which he was prosecuted in two related cases precluding negotiation for a global plea, undersigned counsel requests that the Court impose a sentence concurrent to his Superior Court case. A concurrent sentence would provide the equitable relief that takes into account the sentencing statutory directives of 18 U.S.C. § 3553(a) and D.C. Code § 24-301.01(a).

Respectfully submitted,

A.J. Kramer
Federal Public Defender

_____/s/_____
Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500