UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-215(EGS) |
| | : | |
| v. | : | SENTENCING: FEBRUARY 8, 2007 |
| | : | |
| WAYNE MORRIS | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING AND
MOTION FOR LEAVE TO FILE RESPONSE AFTER TIME HAS EXPIRED

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby files its response to the Defendant's Supplemental Memorandum in Aid of Sentencing. As an initial matter, the government requests leave to file this response out of time. The government's reply to the defendant's Supplemental Memorandum in Aid of Sentencing was due on February 5, 2007. The undersigned prosecutor was, however, out of the office between January 30, 2007, and February 6, 2007, due to the death of a relative. The undersigned prosecutor spoke with defense counsel who does not object to the late filing of this reply. The undersigned prosecutor also notified chambers that government would not be able to file its response in a timely manner.

The government maintains, as it has throughout these proceedings, that the conduct of the officers who arrested the defendant for an unrelated drug charge should have no impact on the defendant's sentence in this matter. The government further states:

1. As the court is aware, on February 11, 2005, the defendant was arrested for distribution of marijuana after he sold marijuana to an undercover police officer. As an arrest team moved in, the defendant fled into the Seaton Market. Once inside of the Seaton Market, the defendant alleges that he was assaulted by members of the arrest team. The investigation into that alleged assault is

ongoing, but the government has agreed that for purposes of this sentencing, the court can assume that an assault occurred.

2. On February 19, 2005, eight days after the defendant's arrest inside of the Seaton Market, a search warrant was executed at the defendant's residence , 23 S. Street, N.W. Washington, D.C. During the execution of that search warrant, officers located a loaded 9mm handgun. The seizure of this weapon led to the defendant's guilty plea in this matter, where he now faces a guideline compliant sentence of 57-71 months.

3. The defendant has argued that in light of the alleged assault during the February 11, 2005, drug arrest, his sentence for being a felon in possession of a firearm on February 19, 2005, should be reduced. This is both counter-intuitive and inconsistent with the goals of federal sentencing.

4. The thrust of a number of the defendant's arguments is that the defendant's decision to take a plea and subsequent sentencing were prejudiced by the government's failure to disclose the alleged assault to defense counsel in his Superior Court drug case. This argument would hold greater weight if the improper conduct was unknown to the defendant (i.e. members of the arrest team being investigated for assaulting other defendants). In such a case, one could argue that because the defendant was unaware of the improper conduct, he could not properly evaluate the potential impact the improper conduct would have at a trial. In this case, however, as the victim of the alleged assault, the defendant was obviously aware of the improper conduct, and had no identifiable reason to withhold that information from his defense attorney.

5. Further, the alleged assault itself was not exculpatory in nature, and at most could be used to impeach the involved officers. This, however, assumes that the officers who are under investigation would have been essential for trial; they were not. The drug case would have depended

largely on the testimony of the undercover officer who purchased marijuana from the defendant. The defense attempts to enhance the importance of the arrest team's role by noting that they would have recovered the pre-recorded funds from the defendant. In this case, however, the pre-recorded funds were not recovered by the members of the arrest team who are under investigation, but by another officer who entered the store after the defendant had been incapacitated. Accordingly, the government maintains that the defendant was not prejudiced by the failure of the government to disclose the alleged assault of the defendant to the defendant's defense attorney.

6. The defense argues that the government's failure to disclose the alleged assault also adversely impacted the defendant's sentence in the Superior Court drug case. As with the federal sentencing guidelines, however, there is nothing in the Superior Court's voluntary sentencing guidelines that authorizes a reduction of a defendant's sentence if he is the victim of excessive force during arrest. Indeed, the sentencing goals expressed in D.C. Code § 24-301.01(a) are similar to the goals stated under the federal system in 18 U.S.C. § 3553(a). In both sentencing structures the focus is on the conduct of the defendant, not the conduct of the executive branch in arresting and prosecuting the defendant.

7. The government maintains that to show leniency to the defendant because of the alleged use of excessive force during his arrest would contradict the federal sentencing structure outlined in 18 U.S.C. § 3553(a). Specifically, a reduced sentence would reduce the time that the public is protected from the defendant. During the initial sentencing hearing in this matter on May 16, 2006, the Court, after reviewing the defendant's criminal history, fairly described the defendant as being an individual who is "out of control." What the defense proposes is to reduce the defendant's sentence, thus hastening the defendant's return to a community he has victimized for the past seven

years. The community did not use excessive force against the defendant, and to expose them to the risks posed by the defendant because of the actions of a rogue officer would itself be unjust.

8. While acknowledging that the court has discretion to impose a concurrent sentence in this case, §5G1.3.(c), the government opposes a concurrent sentence. First, the government disagrees that these two arrests are so closely connected as to justify a concurrent sentence. As set forth in the search warrant affidavit for the defendant's residence, officers actually received information about the defendant a day before he was arrested in the Seaton Market. According to the search warrant affidavit, on February 10, 2005, a resident informed the police that "a black male in his 20's" was selling drugs from the defendant's residence. The next day, the defendant was arrested in the Seaton Market. While that arrest clearly corroborated the citizen's information, and provided further support for the search warrant, it cannot be said that but for the defendant's arrest on February 11, 2005, the officers would not have searched his residence and found the firearm.

9. A concurrent sentence could be imposed in order to insure that the defendant's sentence was "reasonable" under the guidelines. See §5D1.3(c). Implicit in such a determination would be a finding that a consecutive sentence would be unreasonable in this case. Since becoming an adult in 1999, the defendant has established himself as a drug dealer with a history of assaultive behavior. The fact that the defendant possessed the firearm in this case in his home, rather than on his person is not a mitigating factor, because of his previous conviction for assaulting his own mother in her home while he was under a court order to have no contact with her. Given the defendant's criminal history and prior failures at probation, the government maintains that a sentence of at least 57 months for being a felon in possession of a firearm, consecutive to the defendant's 18 month sentence for distributing marijuana, is inherently reasonable. As this Court noted on May 16, 2006,

"the Court would be well within its authority to sentence [the defendant] at the high end of the guideline range," although the Court noted it did not intend to do so.

10. The only justification that has been advanced for showing the defendant leniency is that he was the victim of an assault during his arrest, and he is cooperating in the government's ongoing investigation. Contrary to the defendant's claim, the defendant's cooperation is not essential to pursuing charges against those responsible for assaulting him during his arrest. Indeed, given his criminal history and flight from the arrest team, the defendant may well be a liability to the prosecution. As the government has indicated, the proper forum to seek redress for this assault is in the civil arena and through the criminal prosecution of those who used excessive force when they arrested him. To reduce the defendant's sentence because of this assault, is to give him a benefit that he has not earned, and a benefit that ultimately punishes not the officers who assaulted him, but the community who we have an obligation to protect.

WHEREFORE, the government reiterates its request that the Court sentence the defendant to a period of incarceration within the recommended guideline range of 57-71 months, and that the Court make any such sentence consecutive to any other sentence the defendant is currently serving.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
Bar No. 498610

By:     /s/
John Cummings
Assistant United States Attorney
Federal Major Crimes Section, Maryland Bar
555 4th Street, N.W. #4838
Washington, D.C. 20001
Phone: 514-7561